UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RUSSELL G. ALLEN,

        Plaintiff,

v.                                                                                    Case No. 16-C-1412

UNITED STATES OF AMERICA,

        Defendant.

**DECISION AND ORDER GRANTING SUMMARY JUDGMENT**

During 2005, Plaintiff Russell Allen received a jury award of damages, plus interest, in a lawsuit against a utility company after stray voltage on his property harmed his cattle business and dairy farm conducted thereon. Allen initiated this action against the United States of America to recover federal income taxes and a penalty that he paid after the Internal Revenue Service (IRS) determined that he failed to report a significant portion of the jury award as income on his 2005 federal income tax return. The court has jurisdiction pursuant to 28 U.S.C. § 1346 and 26 U.S.C. § 7422. This matter comes before the court on the United States' motion for summary judgment. ECF No. 24. At issue is whether a portion of the jury's damages award should be taxed as ordinary income, whether the interest award on the damages should be taxed as ordinary income, and whether the IRS properly assessed an accuracy penalty against Allen for failing to report a portion of the settlement proceeds on his 2005 return. For the reasons set forth below, the United States' motion for summary judgment will be granted and the case dismissed.

## BACKGROUND

There are no disputes of material fact between the parties. In 2000, Allen filed a lawsuit in the Brown County Circuit Court against Wisconsin Public Service (WPS), a utility company, seeking compensation for damages caused by stray voltage on his dairy farm. Joint Stipulation of Fact (JSF) ¶ 1, ECF No. 22. His complaint described the following alleged damages:

> [Allen] has experienced decreased milk production, injury and damage to his dairy herd, has suffered property damage, real and personal, has lost value in the use and enjoyment of his property, has lost profits and income, has incurred veterinary and other expense, and has been otherwise damaged and injured.

*Id.* ¶ 2. The complaint also alleged that the stray voltage constituted a nuisance that had caused damages. *Id.* ¶ 3.

Twenty-three witnesses eventually testified at an eighteen-day trial. *Id.* ¶ 4. Prior to the trial, Allen represented at a hearing that his suit was not a claim for personal injury, and the parties agreed to exclude any medical evidence. *Id.* ¶ 5. At the trial, there was no evidence presented regarding specific medical expenses incurred by Allen for personal injuries, the details of any injuries suffered by Allen or other farm workers, the value of Allen's real property (the dairy farm), the property's devaluation over time, or Allen's basis in the property. *Id.* ¶¶ 6, 8–9. Neither a real property appraiser nor an accountant testified during the trial. *Id.* ¶¶ 7, 10.

Allen's expert witness, Dr. Michael Behr, testified about the economic damages suffered by Allen between 1976 and 2000 as a result of stray voltage. *Id.* ¶ 11. Based on Allen's operations data, industry information about farm profitability absent stray voltage, and nationwide farm budgeting information, Dr. Behr calculated damages resulting from milk loss (the loss of profits due to reduced milk production), young stock loss (the loss of young dairy cow sales due to the herd not

2

growing as it should have), and cull cow loss (the loss of cows to sell for beef), all as mitigated by cost savings from farm costs not expended because of the smaller herd size. *Id.* ¶¶ 12–13. Dr. Behr therefore testified that Allen suffered $11,000,000 in economic damages, a number that he adjusted to $13,870,967 to account for inflation. *Id.* ¶ 14.

During closing arguments, Allen's lawyers asked the jury to award more than $13,000,000 in economic damages to account for the loss of cows and profits over time. *Id.* ¶ 15. The parties refer to damages awarded for this purpose as the Economic Damages. *Id.* Also during closing arguments, Allen's lawyers asked the jury to award an unspecified amount of compensatory damages for annoyance, inconvenience, and the loss of use and enjoyment of Allen's property. *Id.* ¶ 16. The parties refer to damages awarded for this purpose as the Tort Damages. *Id.* Although Allen had not presented any expert testimony regarding the amount of Tort Damages that he sought, Allen's lawyers advised the jury to base the amount of any Tort Damages award on the $13,000,000 economic damages calculated by Dr. Behr. *Id.* ¶ 17–18.

Ultimately, the jury returned a special verdict awarding Allen $1,750,000, allocating $750,000 to Economic Damages and $1,000,000 to Tort Damages. *Id.* ¶¶ 19–20; *see also* ECF No. 22-3 at 3. After the award was affirmed on appeal, Allen received a $2,269,233.35 payment from WPS during tax year 2005 consisting of the $750,000 Economic Damages award, the $1,000,000 Tort Damages award, and $519,233.35 in interest that had accrued while the appeal was pending. JSF ¶¶ 21–23. Upon receiving the funds in 2005, Allen paid attorneys from two different firms a total of $1,230,384.38 in unpaid fees, costs, and expenses incurred while representing him in his suit against WPS. *Id.* ¶¶ 26–27. In a letter, one of his attorneys advised him to seek the advice of a tax preparer or other suitably qualified person because the jury award proceeds from WPS were "probably taxable." *Id.* ¶ 28.

3

Allen prepared and signed his 2005 federal income tax return on February 27, 2006. *Id.* ¶ 29. Although he consulted with his accountant regarding the content of the 2005 return, his accountant ultimately refused to sign and submit the return because he was not comfortable with its contents and disagreed with Allen's proposed reporting of the proceeds from the jury award. *Id.* ¶ 30. On the 2005 return, Allen reported the $750,000 Economic Damages as ordinary income on Schedule F and the $519,233.35 interest on the damages award as capital gains income on Schedule B. *Id.* ¶ 34. He also reported $548,736 in legal expenses as farm business expenses on Schedule F, although that number did not include all legal expenses he paid during tax year 2005. *Id.* ¶¶ 34, 37. Allen did not, however, report the $1,000,000 in Tort Damages, nor did he include any disclosure statement explaining his position on the taxability of the $1,000,000 in Tort Damages. *Id.* ¶ 36. Based on these and other reported income and expenses, Allen reported that for 2005 he owed $124,827 in taxes, which he paid. *Id.* ¶ 38.

In 2008, the IRS conducted an audit of Allen's 2005 tax return. *Id.* ¶ 39. Allen participated in the audit, which culminated in a December 23, 2008 final report. *Id.* ¶¶ 40–41. The audit report treated the $750,000 Economic Damages, $1,000,000 Tort Damages, and $519,233.35 interest award as ordinary income under Schedule F, and it also included all $1,230,384.38 in legal expenses as farm business expenses under Schedule F. *Id.* ¶ 42. The IRS also assessed an accuracy penalty against Allen under 26 U.S.C. §§ 6662 and 6662A for underreporting his income by $1,000,000 on his original 2005 return. JSF ¶ 44. Taken together, the IRS therefore determined that Allen owed $145,836.89 in tax liabilities, interest, and penalties for 2005 in addition to the tax liability he had paid originally. *Id.* ¶¶ 45–46.

4

After paying the additional liabilities, Allen filed a claim for a refund with the IRS in the form of an amended 2005 return asserting that he overpaid his liabilities by $130,215. *Id.* ¶¶ 47–49. The amended 2005 return claimed $119,408.00 of legal expenses from one of two law firms as an itemized deduction on Schedule A, categorized the $519,233.35 interest award as capital gains income under schedule B, and claimed the $1,000,000 Tort Damages as nontaxable recovery of capital under Schedule B Form 4797. *Id.* ¶ 50. Allen did not include the $750,000 Economic Damages on the amended 2005 return, but he and the United States agree that he properly reported that amount as ordinary income on his original 2005 return. *Id.* ¶¶ 50, 57. The IRS ultimately disallowed the refund claim. *Id.* ¶ 52. Allen subsequently filed this action seeking a refund.

## LEGAL STANDARD

Summary judgment should be granted when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, the time and expense of the parties and the court should not be wasted on a trial when there are no material facts in dispute, one party is entitled to judgment on those facts, and thus there is nothing to try. In deciding a motion for summary judgment, all reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoted source and internal quotation marks omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* A court may properly enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element

5

essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

**I. Taxation of the Tort Damages and Interest Award**

An assessment by the IRS constitutes a "determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes," and such an assessment "is entitled to a legal presumption of correctness." *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002). As a result, "the taxpayer bears the burden of rebutting this presumption and proving he is entitled to a refund." *Estate of Starkey v. United States*, 223 F.3d 694, 698 (7th Cir. 2000) (citing *United States v. Janis*, 428 U.S. 433, 400 (1976)).

The Internal Revenue Code (IRC) defines "gross income" as "all income from whatever source derived," and courts recognize the "sweeping scope" of that definition. 26 U.S.C. § 61(a); *Chamberlain ex rel. Chamberlain v. United States*, 401 F.3d 335, 337 (5th Cir. 2005). Likewise, the IRC broadly defines "ordinary income" to "include[] any gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231(b)." 26 U.S.C. § 64. Section 1231(b) identifies certain types of property used in a trade or business—including certain livestock. 26 U.S.C. § 1231(b)(3). As a counterpart to the broad interpretation that the court affords to the definitions of gross income and ordinary income, the court must narrowly construe any exemption from the definition of ordinary income. *See United States v. Centennial Sav. Bank FSB*, 499 U.S. 573, 583 (1991) (citing *Comm'r v. Jacobson*, 336 U.S. 28, 49 (1949)). "In essence, all accessions to wealth are taxable unless the taxpayer demonstrates that the gain at issue fits within

6

a particular statutory exclusion from income." *Pipitone v. United States*, 180 F.3d 859, 862 (7th Cir. 1999) (citing *Downey v. Comm'r*, 33 F.3d 836, 837 (7th Cir. 1994)).

### A. Interest on the Jury Award

The IRS' audit report treated the $519,233.35 interest award as ordinary income reported on Schedule F, but Allen's amended 2005 return sought to treat the interest award as capital gains income reported on Schedule B. JSF ¶¶ 42, 50. The United States argues that the interest award constitutes compensation for the loss of use of money—in this case, an award of damages by a jury pending the appeal—and as compensation the interest should therefore be taxed as ordinary income. *See Francisco v. United States*, 54 F. Supp. 2d 427, 434–35 (E.D. Pa. 1999). Allen counters that the IRS erroneously characterized the interest award as self-employment income arising out of his farming operations, although he cites no authority in support of this argument.

The definition of gross income expressly includes "interest." 26 U.S.C. § 61(a)(4); *see also* 26 C.F.R. § 1.61–7(a) ("As a general rule, interest received by or credited to the taxpayer constitutes gross income and is fully taxable."). The United States Tax Court has held that even interest that accrues on a *non-taxable* award of personal injury damages nonetheless constitutes taxable ordinary income, *Kovacz v. Comm'r*, 100 T.C. 124, 127–28 (1993), suggesting that Allen's statutory interest award for the loss of use of the jury award likewise constitutes ordinary income. Allen's brief in opposition to the motion for summary judgment offers no affirmative argument that the interest award constituted a capital gain, as he asserted in his amended 2005 return, so the court therefore finds that he has failed to rebut the Commissioner's determination that the interest award should be treated as ordinary income.

Allen does, however, argue that IRS erred by taxing the interest as net earnings from self-employment. Under the IRC, "net earnings from self-employment" means "the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed . . . which are attributable to such trade or business," and "self-employment income" consists of any net earnings from self-employment, subject to exceptions not relevant here. 26 U.S.C. § 1402(a)–(b). As with the definition of gross income, the IRS broadly construes the self-employment tax provisions in favor of treating income as earned from self-employment." *Peterson v. Comm'r*, 827 F.3d 968, 986 (11th Cir. 2016) (citing *Bot v. Comm'r*, 353 F.3d 595, 599 (8th Cir. 2003)). Courts hold that income is "derived" from a trade or business and therefore subject to the self-employment tax when there is a nexus between the income received and the taxpayer's trade or business. *See Wuebker v. Comm'r*, 205 F.3d 897, 902 (6th Cir. 2000) (citing *Milligan v. Comm'r*, 38 F.3d 1094, 1098 (9th Cir. 1994)); *Schelble v. Comm'r*, 130 F.3d 1388, 1391–92 (10th Cir. 1997) (citing *Newberry v. Comm'r*, 76 T.C. 441, 444 (1981)).

Here, the court has already determined that the IRS properly treated the interest award as gross income, and there is no dispute that the interest arose directly out of the damage award Allen received for losses to his business. Allen argues that the instructions to Schedule F do not include interest on a of list several types of income that should be treated as farm income on that form and that treating the interest as self-employment income would be appropriate only if he were a "professional litigant." ECF No. 26 at 3–5. But Allen once again directs the court to no authorities suggesting that the IRS improperly determined that a nexus exists between interest on an award of damages for business losses and the underlying business itself. Consequently, the court concludes that the IRS properly taxed the interest award as ordinary income subject to self-employment tax.

### B. The Tort Damages

Allen next challenges the IRS' characterization of the Tort Damages, which the IRS classified as ordinary income on Schedule F in its audit report but which Allen argues should be classified as a nontaxable recovery of capital on Schedule B Form 4797. JSF ¶¶ 42–50. Allen's brief in opposition to the motion for summary judgment makes clear that he does not assert that the Tort Damages should be classified as a nontaxable personal injury award; rather, he argues only that they should be classified and taxed as a recovery of capital. The IRC defines the term "capital asset" as "property held by the taxpayer (whether or not connected with his trade or business," subject to several exceptions. 26 U.S.C. § 1221(a). In turn, a "capital gain" consists of "gain from the sale or exchange of a capital asset." *Id.* § 1222(1), (3).

When assessing whether to classify an award of tort damages as ordinary or capital income, courts apply the "origin of the claim doctrine," which "focus[es] . . . on the origin and characteristics" of the underlying claims. *See Pipitone*, 180 F.3d at 862; *see also Freda v. Comm'r*, 656 F.3d 570, 574 (7th Cir. 2011) (observing that the "classification of amounts received in settlement of litigation is to be determined by the nature and basis of the action settled" (quoting *Nahey v. Comm'r*, 196 F.3d 866, 868 (7th Cir. 1999))). In other words, the court must determine what the award was made "in lieu of." *Freda*, 656 F.3d at 574. To conduct such an analysis, courts have looked to the damages award itself, any underlying verdict, claims raised in the complaint, evidence presented at trial, and the relief sought during closing argument. *Id.*; *see Gail v. United States*, 58 F.3d 580, 583–85 (10th Cir. 1995).

The United States argues that it is entitled to summary judgment in favor of the IRS' determination that the $1,000,000 Tort Damages award was ordinary income rather than a recovery

9

of capital because the undisputed facts establish that at trial Allen presented no evidence regarding damages to his real property in support of his nuisance claim. In response, Allen essentially argues that, by inference, the existence of the Tort Damages establishes that they pertain to his capital asset—his real property—and were not income: because the jury returned an award of economic damages, the award of Tort Damages necessarily compensated him for his interest in the farm's real estate capital. He contends that his nuisance claim sought to recover not for unrealized cash flow but for stray voltage that interfered with his real estate, a physical capital asset. But "summary judgment 'is the "put up or shut up" moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). Allen's argument from inference does not direct the court to evidence or authority that overcomes the presumption of correctness afforded to the decision of the IRS.

Applying the origin of the claim doctrine indicates that the undisputed facts severely undermine Allen's claim that the Tort Damages for his nuisance claim were awarded as compensation for his capital rather than in lieu of lost profits. There is no dispute that, at trial, Allen did not present any evidence regarding the valuation of his real property or its devaluation over time. JSF ¶ 8. Nor did Allen present any evidence by an appraiser, by an accountant, or regarding his basis in the real property. *Id.* ¶¶ 7, 9–10. Likewise, Allen's evidence at trial regarding losses to his herd focused on lost profits from milk production, lost sales of young dairy cows, and lost sales of beef cows—evidence that quantified his damages in terms of profits and losses to the herd, rather than actual damages to that capital asset. *Id.* ¶ 11–14. Further, Allen does not dispute that, during his counsel's closing argument, counsel directed the jury to look to the amount of calculated economic

damages, particularly a per-cow profit calculated by Dr. Behr, when determining the amount of any Tort Damages awarded. Def.'s Proposed Findings of Fact (DPFOF) ¶ 17, ECF No. 23. Although Allen's original complaint does contain more specific claims regarding the capital nature of his real estate—alleging that he "has suffered property damage" and "has lost value in the use and enjoyment of his property"—the purely economic nature of the evidence ultimately presented at trial diminishes the utility of those allegations from early in the litigation. Based on these undisputed facts showing an absence of any evidence or argument at trial suggesting that Allen sought to recover for interference with his real property as a capital asset, the court concludes that the IRS properly taxed the Tort Damages as ordinary income.

**II. The Accuracy Penalty**

Having determined that the IRS' audit report properly classified the interest award and the Tort Damages as ordinary income, the court also concludes that the IRS appropriately assessed an accuracy penalty against Allen. Under 26 U.S.C. § 6662(d)(1)(A)(i)–(ii), "there is a substantial understatement of income tax for any taxable year if the amount of the understatement for the taxable year exceeds the greater of" either 10% of the required tax or $5,000. When an underpayment of the required tax occurs as a result of any substantial understatement of income tax, the IRS assesses a penalty equal to 20% of the underpayment. *Id.* § 6662(a), (b)(2). There is no dispute that on his original 2005 tax return Allen neither reported the Tort Damages as income nor submitted a disclosure statement taking a position on their eligibility for taxation. JSF ¶¶ 35–36. Because there is also no dispute that Allen received the $2,269,233.35 jury award in 2005 but reported only the $750,000 Economic Damages as ordinary income and the $519,233.25 interest award as capital gains income, *id.* ¶¶ 23, 34, Allen failed to report $1,000,000 in income—which unquestionably resulted in a substantial understatement of his income tax.

Allen counters that the accuracy penalty does not apply to him because his original 2005 tax return reflected a good faith effort to report his income and tax liability for that year. The IRC does include an exception for the accuracy penalty, providing that "[n]o penalty shall be imposed under section 6662 . . . with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion." 26 U.S.C. § 6664(c)(1); *see also* 26 C.F.R. § 1.6664–4(c). "Generally [reliance on the § 6664(c)(1) exception] requires that [the taxpayer] have obtained an opinion from an accountant or lawyer." *Brown v. Comm'r*, 693 F.3d 765, 769 (7th Cir. 2012) (first citing *United States v. Boyle*, 469 U.S. 241, 250–51 (1985); then citing *Mulcahy, Pauritsch, Salvador & Co. v. Comm'r*, 680 F.3d 867, 872 (7th Cir. 2012)). However, there is no dispute that Allen not only failed to disclose his position on the Tort Damages to the IRS when he submitted his original return but also expressly deviated from the advice of the accountant whose advice he originally sought to prepare his return. JSF ¶¶ 30–31, 36. The court therefore finds that, based on the undisputed facts, Allen cannot show that he had reasonable cause or acted in good faith in failing at least to disclose his position regarding the Tort Damages on his original 2005 return.

## CONCLUSION

For the foregoing reasons, the United States' motion for summary judgment (ECF No. 24) is **GRANTED**. The Clerk is directed to enter judgment dismissing this action in favor of the United States.

Dated this 3rd day of August, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court